**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

| | |
|---|---|
| ERVIN BRADLEY vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv742(W)(S) |
| ROBERTA W. THOMAS vs. FRITO-LAY | CIVIL ACTION NO.: 3:05cv743(W)(S) |
| JANE A. BULLY vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv744(W)(S) |
| TERRY BLACKMON vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv745(W)(S) |
| LAIRD MOSES vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv746(W)(S) |
| ROOSEVELT RANSBURY vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv747(W)(S) |
| CARL RANSBURY vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv748(W)(S) |
| LISA CHAMBERS vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv749(W)(S) |
| FRANCES CLAY vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv750(W)(S) |
| GERLDEAN DAVIS vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv751(W)(S) |
| MARY A. FUNCHES vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv752(W)(S) |
| LESIA ANN JOHNSON vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv753(W)(S) |
| RONNEY E. MAGEE vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv754(W)(S) |
| JERLEAN McCOY vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv755(W)(S) |
| HELEN WASHINGTON vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv756(W)(S) |
| BERNITA TAYLOR vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv757(W)(S) |
| CARIE FRAZIER vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv758(W)(S) |
| BARRY HERON vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv759(W)(S) |
| ROY LEE HICKS vs. FRITO-LAY | CIVIL ACTION NO. 3:05cv760(W)(S) |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before this court is defendant's motion for summary judgment submitted in

each of the nineteen (19) above-styled and numbered causes asking this court to

dismiss all nineteen (19) cases in their entirety.  The defendant in each of the nineteen

(19) cases, Frito-Lay, Inc. ("Frito-Lay"), champions Rule 56(b)[1] and (c)[2] of the Federal Rules of Civil Procedure as authority for its request.

The plaintiffs all oppose Frito-Lay's motions for summary judgment.  Former employees of Frito-Lay's Jackson, Mississippi, facility, the plaintiffs contend in their lawsuits that Frito-Lay closed its Jackson, Mississippi, facility because the majority of the facility's employees were African-Americans;  that while operating in Jackson, Mississippi, Frito-Lay discriminated against the African-American plaintiffs with respect to their wages because of their race;  that Frito-Lay closed its Jackson, Mississippi, facility in violation of a National Labor Relations Board's order; and that Frito-Lay's offered severance agreement unlawfully deprived the plaintiffs of full severance pay and other rights.

On March 15, 2004, the plaintiffs collectively filed their action against Frito-Lay in Civil Action No. 3:04-cv-538WS, under Title VII of The Civil Rights Act of 1964, Title

---

[1] Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim ⋯ is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."   Furthermore, Rule 56(c) requires a judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ⋯"

[2] Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, the following:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

42 U.S.C. §§ 2000e,[3] et seq.;  and Title 42 U.S.C. § 1981.[4]   This consolidated complaint also sought declaratory relief under Title 28 U.S.C. § 2201 and 2202.[5] Since the plaintiffs' now-severed complaints all seek the same relief under federal statutes, this court takes original and subject matter jurisdiction over these lawsuits under Title 28 U.S.C. § 1331,[6] under Title 28 U.S.C. § 2000e-5,[7] and under Title 28

---

[3] Title 42 U.S.C. § 2000e-5(f) authorizes a civil action by the EEOC or the person aggrieved by an unlawful employment action that discriminates on the basis of race, color, religion, sex, or national origin.

[4] Title 42 U.S.C. § 1981(a) provides that, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

[5] Title 28 U.S.C. § 2201(a) provides that, "[i]n a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

Title 28 U.S.C. § 2202 provides that, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

[6] Title 28 U.S.C. § 1331 provides the district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[7] Title 42 U.S.C. § 2000e-5(e)(1) requires one to file a claim with the EEOC within 180 days after the occurrence of the challenged discriminatory event, while § 2000e-5(f)(1) mandates a plaintiff to file her complaint with the federal court within 90 days of having received a Right-to-Sue Letter.

U.S.C. § 1343.[8]  The plaintiffs' complaints also assert state law claims of intentional infliction of emotional distress over which this court has supplemental jurisdiction under Title 28 U.S.C. § 1367.[9]

The defendant's motion for summary judgment wages a multi-pronged attack on the plaintiffs' claims.  Several of the plaintiffs, says Frito-Lay, do not have standing for their claims because they lack sufficient legal interest to maintain the litigation. Other plaintiffs, continues Frito-Lay, have forfeited the right to litigate their claims for failure to pay proper filing fees.  Then, says Frito-Lay, all of the plaintiffs have failed to comply with this court's July 1, 2005, order directing the plaintiffs to respond to the defendant's interrogatories and production requests.  Seeking reasonable attorney fees and costs related to this matter, the defendant also moves to dismiss the plaintiffs' state-law emotional distress claims and any claims for back pay or lost wages pursuant to Rule 41(b)[10] of the Federal Rules of Civil Procedure.

---

[8] Title 28 U.S.C. § 1343 provides that, "[t]he district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person ⋯ [t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

[9] Title 28 U.S.C. § 1367(a) provides that, "[e]xcept as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

[10] Rule 41(b) of the Federal Rules of Civil Procedure states that, "[f]or failure of the plaintiff to prosecute or to comply with these rules or with any order of a court, a defendant may move for dismissal of an action or of any claim against the defendant."

4

Frito-Lay's principle argument which addresses the claims of all nineteen (19) plaintiffs contends that the plaintiffs' claims are all time-barred by Title 42 U.S.C. §2000e-5(e)(1) (see footnote 9) because they failed to file their claims of discrimination under Title VII with the Equal Employment Opportunity Commission within 180 days after the plaintiffs knew or should have known that the challenged discriminatory actions had occurred.  In passing, Frito-Lay argues that this court does not have jurisdiction over activity under the auspices of the National Labor Relations Act.  And, finally, Frito-Lay disputes plaintiffs' claims that it acted discriminatorily in choosing to close its Jackson, Mississippi, plant.

This court is persuaded by various Frito-Lay's arguments and dismisses all of plaintiffs' claims in all of the above-styled and numbered lawsuits.  The court's reasoning is set out below.

**BACKDROP**

Frito-Lay, up until July of 1999, operated a facility in Jackson, Mississippi.  The plant produced potato chips and other snack food products and employed approximately 300 workers.  The majority of these employees were African-American.

In a letter to Frito-Lay North America Associates dated January 25, 1999, Frito-Lay announced that, after considerable study beginning in mid-1998, it had initiated a consolidation project which included the closing of the Jackson, Mississippi, facility by July of 1999 and re-locating its operation to a newer plant in Jonesboro, Arkansas.

Frito-Lay says it posted a notice on its daily board on January 25, 1999, to inform its employees of this decision as they arrived for their respective shifts at the Jackson, Mississippi, facility.  Frito-Lay provided its employees a booklet dated

5

January 25, 1999, explaining the severance package for hourly workers and over-the-road drivers.

The next day, on January 26, 1999, Jackson, Mississippi's local newspaper of widest circulation, The Clarion-Ledger, carried the announcement, thereby notifying not only Frito-Lay's employees, but also the entire community.  Thereafter,  Frito-Lay employees held meetings to discuss Frito-Lay's offered severance package.

Frito-Lay denies all the plaintiffs' discrimination claims, asserting that neither race nor any other impermissible factor played a role in Frito-Lay's business decision to consolidate its operations in more advanced plants such as the one in Jonesboro, Arkansas, while closing its plants located in Chamblee, Georgia;  Jackson, Mississippi;  Marlborough, Massachusetts;  and Salisbury, North Carolina.  Frito-Lay insists that this was a business decision, based on a review began in mid-1998 which canvassed the capacity of all United States facilities.

Ultimately, says Frito-Lay, the decision to close the Jackson, Mississippi, facility was made by Tim Bensley, a former Vice President of Finance-Operations who had been asked to study ways to create a more efficient operating system nationwide. Frito-Lay says that Bensley had never visited the Jackson facility when he made the recommendation to close it, and that he had no information regarding the racial make-up of the Jackson facility's workforce, or any other facility's workforce, when he made his proposal.

Of course, plaintiffs herein dispute Frito-Lay's contention that its decision to close the Jackson, Mississippi, was race-neutral.  According to the plaintiffs, Frito-Lay favored the closing of facilities in predominantly African-American areas while opening

6

facilities in predominantly white suburban areas.  Plaintiffs say that the Jackson, Mississippi, facility was more productive than plants in other areas.  Thus, say plaintiffs, Frito-Lay must have had a racial basis for its decision rather than an economic one.

## PROCEDURAL HISTORY

Initially, on March 15, 2004, the plaintiffs in all nineteen (19) cases herein filed their lawsuit as one lawsuit in Civil Action No. 3:04-cv-538 WS.  Seeking declaratory relief under Title 28 U.S.C. §§ 2201 and 2202, plaintiffs' complaint sought relief under Title VII of the Civil Rights Act and also under Title 42 U.S.C. § 1981.

This court on June 16, 2004, dismissed plaintiffs' claims under § 1981 as time-barred.   "The limitations period applicable to § 1981 claims is that applied to the most closely analogous claim under state law."  *Felton v. Polles*, 315 F.3d 470, 484 (5th Cir. 2002), holding under Mississippi law that the relevant period is three years.[11] This court found that plaintiffs' claims herein under § 1981 filed on March 15, 2004, were filed beyond the allowable period.

The court on August 29, 2005, also dismissed the claims of plaintiffs Jennifer McCray, Evelyn Richardson, Doyle Harrington and Larry Henderson.  The court's dismissal, with prejudice, was entered pursuant to a Stipulation of Dismissal filed by those plaintiffs.

---

[11] Mississippi Code Ann. § 15-1-49 states in pertinent part that, "[a]ll actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after."

Thereafter, on December 19, 2005, this court, speaking through its United States Magistrate Judge, held that the plaintiffs' combined lawsuit should be severed into nineteen (19) separate cases, beginning with Civil Action No. 3:05-cv-742, through Civil Action No. 3:05-cv-760.  Civil Action No. 3:04-cv-538 WS was closed.

## THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the nonmoving party, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The moving party initially must show that "there is an absence of evidence to support the nonmoving party's case."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The moving party need only point out this absence;  it "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Allegations in the pleadings, naked assertions of factual disputes, and conclusory allegations are not sufficient.  *Solo Serve Corporation v. Westowne Association*, 929 F.2d 160, 164 (5th Cir.1991);  *Herrera v. Millsap*, 862 F.2d 1157, 1160 (5th Cir. 1989);  and *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195-96 (5th Cir. 1986).  After such a showing, the nonmoving party must come forward with "specific facts" establishing a genuine issue for trial.  *Matsushita Electric Industrial Co., LTD v. Zenith Radio Corporation*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  Unsubstantiated assertions,

8

improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

## FAILURE TO PAY FILING FEES

According to the Clerk of the Court, two plaintiffs have failed to pay the required filing fee.  These two plaintiffs are Ronney E. Magee and Helen Washington. Inasmuch as these plaintiffs have not paid the requisite fees to proceed in this court, their respective complaints, Civil Action Nos. 3:05-cv-754WS and 756WS are hereby dismissed.

## LACK OF DISPUTE OR CONTROVERSY

Frito-Lay asks this court to dismiss the claims of Jane Bully, Ronda Laird Moses, Bernita Taylor and Barry Heron as a matter of law because these plaintiffs voluntarily ended their employment relationships with Frito-Lay before suffering the alleged adverse employment action which forms the basis of all the plaintiffs' Title VII claims.

Frito-Lay announced on January 25, 1999, that it would close its Jackson, Mississippi, facility.  Plaintiff Jane Bully ended her employment with Frito-Lay when she retired on March 28, 1998.  Plaintiff Ronda Laird Moses resigned from her position with Frito-Lay to return to school as a full-time student on January 4, 1999.

Plaintiff Bernita Taylor resigned from her position with Frito-Lay to seek another employment opportunity in February, 1998.  And, plaintiff Barry Heron resigned from his position with Frito-Lay in 1997 to accept another job.  Thus, all these plaintiffs had resigned their employment before the adverse event of which they complain.

A dispute or controversy is mooted when the parties are no longer adverse, or when the parties no longer have sufficient legal interests to maintain the litigation. *Goldin v. Bartholow*, 166 F.3d 710, 717-18 (5th Cir. 1999).  A moot case presents no case or controversy as is required for this court's jurisdiction under Article III of the Constitution of the United States.[12]  *Id.* at 718, citing *Hogan v. Mississippi University for Women*, 646 F.2d 1116, 1117 n. 1 (5th Cir.1981).  All of this is captured in the legal doctrine described as "standing."  A plaintiff must have standing before a federal court may entertain his or her suit.  Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To have standing, "a plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized ⋯ and (b) actual or imminent not conjectural or

---

[12] Article III, Section 2, Clause 1, of the United States Constitution provides that "[t]he judicial Power shall extend to all *Cases*, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;-to all Cases affecting Ambassadors, other public Ministers and Consuls;-to all Cases of admiralty and maritime Jurisdiction;-to Controversies to which the United States shall be a Party;-to *Controversies* between two or more States;-between a State and Citizens of another State;-between Citizens of different States;-between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."

hypothetical ⋯ Second, there must be a causal connection between the injury and the conduct complained of ⋯ Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, at 560-61 (citations omitted). "Failure to establish any one of these three elements deprives the federal court of jurisdiction to hear the suit." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002).

Inasmuch as these plaintiffs were no longer employed by Frito-Lay when the January 25, 1999, announcement was made to close the Jackson, Mississippi, facility, they cannot show the elements listed in the *Lujan* case. This court, then, must dismiss their complaints on this ground alone. As will be seen later, these complaints also suffer a fatal deficiency under Title VII's time bar.

### CLAIMS UNDER THE NATIONAL LABOR RELATIONS ACT

The plaintiffs' complaints also refer to their proceedings before the National Labor Relations Board which addressed alleged violations of the National Labor Relations Act,[13] not Title VII's anti-retaliation provision. This court does not have jurisdiction over activity which is arguably subject to the National Labor Relations Act

---

[13] Title 29 U.S.C. § 157 of the National Labor Relations Act provides that, "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title."

Title 29 U.S.C. § 158(a)(1) provides that, "(a) [i]t shall be an unfair labor practice for an employer – (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title; ... ."

and will defer to the exclusive competence of the National Labor Relations Board.

*See U.A. 198 Health & Welfare, Education & Pension Funds v. Rester Refrigeration Service, Inc.*, 790 F.2d 423, 425 (5th Cir. 1986), *cert. denied,* 485 U.S. 904, 108 S.Ct. 1074, 99 L.Ed.2d 233 (1988); and *United Food and Commercial Workers Union v. Pilgrim's Pride Corp.*, 193 F.3d 328, 331 (5th Cir. 1999). "The rationale for deference of state and federal courts to the competence of the National Labor Relations Board is to avert possible interference with national labor policies." *McDonald v. Oliver*, 525 F.2d 1217, 1230 (5th Cir. 1976).

Frito-Lay refers to paragraph 14(f) of the plaintiffs' complaints, pointing to the common assertion of all the plaintiffs that Frito-Lay closed its Jackson, Mississippi, facility rather than complying with the National Labor Relations Board's Order directing Frito-Lay to bargain with the union in good faith. Frito-Lay argues that this allegation contained in all the plaintiffs' complaints asserts an unfair labor practice pursuant to Section 8 of the National Labor Relations Act (NLRA), Title 29 U.S.C. § 1538(d), and that this court has no jurisdiction over such claims. *See Hobbs v. Hawkins*, 968 F. 2d 471, 478-79 (5th Cir. 1992) (a district court lacks jurisdiction of employees' claims for violations of the NLRA). Additionally, Frito-Lay argues that the National Labor Relations Board has exclusive jurisdiction over matters of labor policy and the National Labor Relations Act to prevent and remedy unfair labor practices, and that the plaintiffs cannot pursue such a matter in this court through a private cause of action. *Id.*, quoting *Golden State Transit Corporation v. City of Los Angeles*, 493 U.S. 103, 108, 110 S.Ct. 444, 449-450 (1989). This court agrees.

12

In order to preserve the primary jurisdiction of the National Labor Relations Board, the National Labor Relations Act requires that the federal courts not regulate activities, "when it is clear or may fairly be assumed that [such] activities ... are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8."  *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959);  *accord Belknap, Inc. v. Hale*, 463 U.S. 491, 498, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798 (1983);  *Branson v. Greyhound Lines, Inc., Amalgamated Council Retirement and Disability Plan*, 126 F.3d 747, 750-51 (5th Cir. 1997);  and *see Windfield v. Groen Div., Dover Corp.*, 890 F.2d 764, 767 (5th Cir.1989).  The plaintiffs already have pursued their claims against Frito-Lay under the National Labor Relations Act.  Those proceedings now are concluded, and, as noted above, the National Labor Relations Board's jurisdiction over the matter was exclusive.

## FAILURE TO FILE EEOC CHARGE WITHIN 180 DAYS

A plaintiff does not lose the right to an adjudication regarding the causes of action created by Title VII simply because the conduct complained of also offends the National Labor Relations Act.  *See Britt v. Grocers Supply Co., Inc.*, 978 F.2d 1441, 1447 n. 9 (5th Cir. 1992);  however, the plaintiff's claims in this case suffer from another impairment.  When racial discrimination against an employer is the basis of a plaintiff's claim in federal court, the plaintiff is required to show that a timely charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") as a precondition to the filing the civil action in federal court.  *Zipes v. Trans*

13

*World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).  A Title VII plaintiff must file a charge of discrimination with the EEOC no more than 180 days after the alleged discriminatory employment occurred.  Title 42 U.S.C. § 2000e-5 (e)(1) (see footnote 7).

Failure to file a charge with the EEOC within 180 days after the targeted discriminatory conduct will preclude a subsequent civil lawsuit alleging discrimination. The following cases make the point*: In Pruet Production Co. v. Ayles*, 784 F.2d 1275, 1279 (5th Cir. 1986), the plaintiff filed an EEOC charge within one month of termination of employment, and shortly after the time at which plaintiff claims to have become aware of defendant's discriminatory action, but was judged untimely because it was filed more than 180 days after defendant announced the decision to remove plaintiff as controller and secretary-treasurer.  *Pruet*, 784 F.2d at 1278.  The timely filing of a charge was held to be "akin to a limitations statute which a plaintiff must satisfy as a condition precedent to filing suit."  *Id.* at 1279.

In *Cruce v. Brazosport Indep. Sch. Dist.*, 703 F.2d 862, 864 (5th Cir. 1983), the Court granted summary judgment to a defendant school district in a sex discrimination lawsuit filed by a schoolteacher.  The Court found plaintiff's claim that the EEOC's Houston office had refused to allow her to file a charge of sex discrimination was not persuasive because plaintiff had not attempted to file the EEOC charge until nearly a year after the occurrence of the alleged discrimination;  even if the charge had been filed at that time, it would have been untimely.

The time to file a claim of discrimination with the EEOC "begins to run from the time the complainant knows or reasonably should have known that the challenged act

14

has occurred."  A one-time employment event, ..., is "the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued." *Huckabay v. Moore*, 142 F.3d 233, 240 (5th Cir. 1998).

In the instant case, the plaintiffs claim that the decision to close the Jackson, Mississippi, facility was a discriminatory act in violation of Title VII.  Frito-Lay says it informed its employees of this decision as they arrived for their respective shifts on January 25, 1999.  The plaintiffs do not dispute the date they were informed of the closing by Frito-Lay.

The plaintiffs did not file claims with the EEOC until September 1, 1999, a date well outside the 180-day requirement since January 25, 1999, is the date the plaintiffs reasonably should have known that the act they challenge as discriminatory had occurred.  The plaintiffs suggest that the 180-day period should be measured from the time the Jackson, Mississippi, facility actually closed in July of 1999.  However, the United States Court of Appeals for the Fifth Circuit recognizes circumstances where employment may continue for a short time after the occurrence of the allegedly discriminatory decision, such as when an employee is notified of a discharge to be effective on a future date.  In such cases, says the Fifth Circuit, the employee is held to the date he knew or should have known of the allegedly discriminatory decision and may not rely upon the date when employment actually ceases.  *Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002);  *Vadie v. Mississippi State University*, 218 F.3d 365, 371 (5th Cir. 2000); *see also Rhodes v. Guiberson Oil Tools Division*, 927 F.2d 876, 878 (5th Cir. 1991).

The 180-day period for filing a discrimination claim with the EEOC is binding on would-be plaintiffs, and is a precondition to filing suit in district court. *See Cruce v. Brazosport Independent School District,* 703 F.2d 862, 864 (5th Cir. 1983), holding that filing claim with the EEOC within 180 days was a precondition to filing a complaint in federal court; *Zipes v. Trans World Airlines, Inc.*, 455 U.S. at  393 (same); *Pruet Production Co. v. Ayles,* 784 F.2d 1275, 1279 (5th Cir. 1986)*; Davis v. Ceco Building Systems*, 813 F.Supp. 1202, 1206 (N.D. Miss. 1993).  Therefore, since the plaintiffs did not file their EEOC charges within 180 days after January 25, 1999, this court is compelled to grant Frito-Lay's summary judgment motion and dismiss each of these lawsuits.

## THE STATE LAW EMOTIONAL DISTRESS CLAIMS

The plaintiffs' complaints also assert "infliction of emotional distress," a state law claim.  In addressing this claim, this court applies Mississippi's substantive law as required by *Erie Railroad Company  v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (requiring that a federal court apply state law to matters not governed by federal law).   Mississippi imposes a very high standard for these claims, requiring proof that the defendant's conduct was wanton and wilful to a degree that evokes outrage or revulsion.  *Hatley v. Hilton Hotels Corporation*, 308 F.3d 473, 476 (5th Cir. 2002).  A plaintiff must prove "acts so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Speed v. Scott*, 787 So.2d 626, 630 (Miss. 2001).  Title 28 U.S.C. § 1367(a) grants the district

courts supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The claim of "infliction of emotional distress" is such a related claim.

The instant lawsuit was filed on March 15, 2004, over five years after the January 25, 1999, announcement that the Jackson, Mississippi, facility would be closed and over four years after the actual closing.   Claims for intentional infliction of emotional distress are governed by Mississippi's one-year statute of limitations, Mississippi Code Ann. § 15-1-35 (Rev. 2002).[14]  *Randolph v. Lambert*, 926 So.2d 941, 945 (Miss. App. 2006).  Thus, to the extent that the plaintiffs are asserting claims for intentional infliction of emotional distress, their claims are time-barred because the statute of limitations is one year.

Negligent infliction of emotional distress has a three-year statute of limitations under Mississippi law, Mississippi Code Annotated § 15-1-49.[15]  *Randolph v. Lambert*, 926 So.2d at 946.  Again, inasmuch as the lawsuit was filed over five years after the January 25, 1999, announcement that the Jackson, Mississippi, facility would be closed and over four years after the actual closing, the plaintiffs claims, to the extent

---

[14] Mississippi Code Ann. § 15-1-35 provides that, "[a]ll actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after."

[15] Mississippi Code Annotated § 15-1-49 (1) provides that (1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.

that they assert negligent infliction of emotional distress, are time-barred under Mississippi's three-year general statute of limitations.

Under Title 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if – (3) the district court has dismissed all claims over which it has original jurisdiction, ...."  *Westbrook v. City of Jackson*, 772 F.Supp. 932, 943 (S.D. Miss. 1991), citing *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 348, 108 S.Ct. 614, 617, 98 L.Ed.2d 720 (1988); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Therefore, under § 1367(c)(3), this court could dismiss plaintiffs' claims for emotional distress since the court has dismissed plaintiffs' federal claims under Title VII.  Such dismissal would be without prejudice.  This court opts not to pursue this course of action because plaintiffs' state law claims for infliction of emotional distress are clearly barred by Mississippi's applicable statute of limitations.  To dismiss these claims without prejudice would only postpone the appropriate ultimate ruling of dismissal with prejudice for another day by another court.

Additionally, the defendant moves to dismiss the plaintiffs' emotional distress claims and any claims for back pay or lost wages pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure of the plaintiffs to comply with this court's July 1, 2005, Order[16] directing the plaintiffs to respond to the defendant's

---

[16] On July 1, 2005, this court ordered that "Plaintiffs shall serve full and complete responses to all interrogatories and shall produce all documents requested in Defendant's Second Set of Interrogatories and Request for Production of Documents within 10 days of entry of this order."

interrogatories and production requests.  Defendant  seeks all reasonable attorneys

fees and costs relating to this matter.  The plaintiffs respond that this court already has

addressed the discovery matter and has determined that the defendant has failed to

demonstrate intentional or contumacious behavior by the plaintiffs.  Since this court is

persuaded to dismiss all of plaintiffs' claims and lawsuits, the court will deny

defendant's motion.

### CONCLUSION

Therefore, based on the foregoing, this court finds the motion of Frito-Lay for

summary judgment which has been filed in each of the above-styled and numbered

19 causes to be well taken and it is hereby granted.  Each of the above-styled and

numbered causes is dismissed with prejudice.

The court will enter a separate final judgment, in accordance with the local

rules.

**SO ORDERED AND ADJUDGED** this the 25th day of September, 2006.

**s/ HENRY T. WINGATE**
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| CIVIL ACTION NO. 3:05cv742(W)(S) | CIVIL ACTION NO.: 3:05cv743(W)(S) |
| CIVIL ACTION NO. 3:05cv744(W)(S) | CIVIL ACTION NO. 3:05cv745(W)(S) |
| CIVIL ACTION NO. 3:05cv746(W)(S) | CIVIL ACTION NO. 3:05cv747(W)(S) |
| CIVIL ACTION NO. 3:05cv748(W)(S) | CIVIL ACTION NO. 3:05cv749(W)(S) |
| CIVIL ACTION NO. 3:05cv750(W)(S) | CIVIL ACTION NO. 3:05cv751(W)(S) |
| CIVIL ACTION NO. 3:05cv752(W)(S) | CIVIL ACTION NO. 3:05cv753(W)(S) |
| CIVIL ACTION NO. 3:05cv754(W)(S) | CIVIL ACTION NO. 3:05cv755(W)(S) |
| CIVIL ACTION NO. 3:05cv756(W)(S) | CIVIL ACTION NO. 3:05cv757(W)(S) |
| CIVIL ACTION NO. 3:05cv758(W)(S) | CIVIL ACTION NO. 3:05cv759(W)(S) |
| CIVIL ACTION NO. 3:05cv760(W)(S) | |

Memorandum Opinion and Order